UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| McGHEE TONY DUCLOS, CDCR #F-55976,<br><br>                                    Plaintiff,<br><br>v.<br><br><br>R. LA, Correctional Officer;<br>R. GARCIA, Correctional Officer;<br>L. NHAN, Correctional Officer;<br>JACKA WILLIAMS, Registered Nurse;<br>and NURSE ANELLE, Registered Nurse,<br><br>                                    Defendants. | Case No.: 3:22-CV-771 JLS (AHG)<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*; AND (2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF SUMMONS AND COMPLAINT PURSUANT TO 28 U.S.C. § 1915(d) AND FEDERAL RULE OF CIVIL PROCEDURE 4(c)(3)**<br><br>(ECF Nos. 1, 2) |

Plaintiff McGhee Tony Duclos ("Plaintiff" or "Duclos"), proceeding pro se and incarcerated at Mule Creek State Prison ("MCSP") in Ione, California, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* ECF No. 1 ("Compl."). Duclos alleges Defendants R. La, Correctional Officer; R. Garcia, Correctional Officer; L. Nhan, Correctional Officer; Jacka Williams, Registered Nurse; and Nurse Anelle, Registered Nurse (collectively, "Defendants") violated his Eighth Amendment rights by failing to properly protect him while he had suicidal thoughts and attempted suicide. *See id.* at 3–7. Duclos did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) at the time of

filing, but instead has filed a Motion to Proceed *in Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a).  *See* ECF No. 2 ("IFP Mot.").

## MOTION TO PROCEED *IN FORMA PAUPERIS*

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.  *See* 28 U.S.C. § 1914(a).[1]  An action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  The fee is not waived for prisoners, however.  If granted leave to proceed IFP, prisoners remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether their actions ultimately are dismissed.  *See* 28 U.S.C. §§ 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

To qualify to proceed IFP, section 1915(a)(2) requires a prisoner to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. § 1915(b)(1); *id*. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's

/ / /

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020).  The additional $52 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See id*. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of his IFP Motion, Duclos has submitted a certified copy of his CDCR Inmate Statement Report. *See* ECF No. 2 at 7–8; *see also* 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. This financial record shows Duclos had an available balance of $0.00 to his credit at the time of filing. *See* ECF No. 2 at 7. Therefore, the Court **GRANTS** Duclos's IFP Motion and declines to assess any initial partial filing fee pursuant to 28 U.S.C. §§ 1915(a)(1) and (b)(1). *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Bruce*, 577 U.S. at 86; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). Instead, the Court **DIRECTS** the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), or her designee, to collect the entire $350 balance of the filing fee required by 28 U.S.C. § 1914 and to forward all payments to the Clerk of the Court pursuant to the installment provisions set forth in 28 U.S.C. § 1915(b)(2).

**SCREENING PURSUANT TO 28 U.S.C. §§ 1915(E)(2)(B) AND 1915A(B)**

**I.      Standard of Review**

Because Duclos is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must dismiss *sua sponte* a prisoner's IFP complaint, or any portion thereof, that is frivolous, is malicious, fails to state a claim, or seeks damages from immune defendants. *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (discussing 28 U.S.C. § 1915(e)(2)) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or

malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And, while the court "ha[s] an obligation where the petitioner is pro se, particularly in a civil rights case, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## II.  Plaintiff's Allegations

The events at issue occurred when Duclos was incarcerated at R.J. Donovan State Prison ("RJD") in San Diego, California. *See* Compl. at 3–7. In Count One, Duclos alleges that, on November 11, 2021, he was at his prison work station with his supervisor, Defendant R. La. *Id.* at 3. After finishing his work, Plaintiff told La "[he] was done with [his] work" and "that [he] was now going to the back to . . . choke [himself]." La allegedly told Plaintiff she would "write [him] up for talking that freaky shit." *Id.* Duclos then went to a closet in the culinary area and attempted suicide by hanging himself. *Id.* He was taken to the hospital. *Id.* at 4.

In Count Two, Duclos claims that when he returned to RJD on November 12, 2021, he was admitted to the outpatient housing unit and placed on suicide watch. *Id.* at 4. On the morning of November 13, 2021, Duclos alleges he saw a line attached to the light fixture in his room. *Id.* He claims he grabbed the line and told a nurse he was going to hang himself. *Id.* He then attempted suicide again by tying the line to the top bunk and rolling off. *Id.*

Duclos alleges in Count Three that, on November 13, 2021, he was transferred to Lancaster State Prison ("LSP"), admitted to their "crisis bed," and placed on suicide watch. *Id.* at 5. He was discharged on November 16, 2021, and on November 19, 2021, he was transferred back to RJD. *Id.* Upon his arrival at RJD, Plaintiff alleges he was readmitted to a crisis bed by Dr. Soto because "there was a note in [Soto's] files which indicated that [Duclos] had no intention of making it to [his] birthday" on November 26, 2021. *Id.* Duclos states that after being awakened by medical staff just after midnight on November 20, 2021, for a blood pressure check, he saw a long string under his mattress. *Id.* Plaintiff claims he told Defendant Nurse Anelle he was going to hang himself with it; he then proceeded to choke himself with the string several times, losing consciousness. *Id.* Defendants R. Garcia, L. Nhan, and "the nurses" allegedly "[tried] to talk [Duclos] into giving them the string that was around [his] neck." *Id.* Duclos then claims he tried to attach the string to a metal box on the ceiling. *Id.* at 5–6. Duclos alleges his smock fell down, leaving him naked, at which point Defendant Anelle began laughing at him and threatened to "write him up" for indecent exposure. *Id.* at 6. According to Duclos, Defendant Garcia summoned a sergeant who was able to remove the string from Duclos's neck. *Id.*

### III. Analysis

The Eighth Amendment requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A prison official acts with 'deliberate

indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation." *Norvell v. Roberts*, No. 20-cv-0512 JLS (NLS), 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (citing *Estelle*, 429 U.S. at 105–07); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)). Rather, "[t]o 'show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health.'" *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016)). "[A] purposeful act or failure to respond to a prisoner's pain or possible medical need" that causes harm is sufficient to establish deliberate indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

*McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104) *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997; *Jett*, 439 F.3d at 1096; *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016). "A heightened suicide risk or an attempted suicide is a serious medical need." *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010), *vacated*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011) (citing *Farmer*, 511 U.S. at 837; *Kamakeeaina v. City & Cnty. of Honolulu*, No. 11-cv-00770 JMS, 2014 WL 1691611, at *7 (D. Haw. Apr. 29, 2014), *affirmed sub nom. Kamakeeaina v. Maalo*, 680 F. App'x 631 (9th Cir. 2017) (finding statements that plaintiff was "ready to commit suicide" were sufficient to show serious medical need)).

Duclos alleges he told Defendant La he was going to hang himself and La responded that she was going to "write [him] up for talking that freaky shit." Compl. at 3. Duclos then attempted suicide by hanging himself in a closet. *Id.* These allegations are sufficient to plausibly state an Eighth Amendment claim against La. *Iqbal*, 556 U.S. at 678; *McGuckin*, 974 F.2d at 1059; *Kamakeeaina*, 2014 WL 1691611, at *7.

Duclos also alleges that, while he was under suicide watch at RJD, he told Defendant Anelle that he was going to hang himself with a string he found under his mattress. Compl. at 5. While she was discussing the issue with other nurses, Duclos began choking himself into unconsciousness with the string. *Id.* This went on for over an hour. *See* ECF No. 1-2 at 4. According to Duclos, when he fell down while trying to tie the string to a metal box on the ceiling and his smock fell off, Anelle laughed and threatened to "write him up" for indecent exposure. Compl. at 5–6. Duclos claims he heard Anelle and another nurse say that "the only way we're going to activate our alarm is if he is not moving or we notice that he is not breathing because our jobs are on the line." *Id.* at 6. These allegations are sufficient to plausibly state an Eighth Amendment claim against Anelle. *Iqbal*, 556 U.S. at 678; *McGuckin*, 974 F.2d at 1059; *Kamakeeaina*, 2014 WL 1691611, at *7.

According to Duclos, after he began choking himself with the string, Defendant Garcia summoned a supervisor, Sergeant Wilbon. Compl. at 6. Wilbon was able to get

the string away from Duclos. *Id.* 6. Wilbon told Garcia and Lhan "they should have activated their alarms the moment they became aware that an inmate who is on suicide watch has a string in his possession and is using it to choke himself." *Id*. Wilbon also asked why the water in Duclos's cell had been turned off, and Garcia allegedly told Wilbon "they thought [Duclos] would flood the tier." *Id.* Duclos claims that at this point, Defendants Anelle, Garcia, Nhan, and Williams left and did not provide him with any medical care. *Id.* He further alleges that these Defendants did not ensure the suicide watch cells in which he was detained were free of items, such as the line and the string, with which Duclos could attempt suicide. *Id.* at 4–7. These allegations are sufficient to plausibly state an Eighth Amendment claim against Defendants Anelle, Garcia, Nhan, and Williams. *Iqbal*, 556 U.S. at 678; *McGuckin*, 974 F.2d at 1059; *Kamakeeaina*, 2014 WL 1691611, at *7.

## CONCLUSION

In light of the foregoing, the Court:

(1) **GRANTS** Duclos's Motion to Proceed *in Forma Pauperis* pursuant to 28 U.S.C. § 1915(a) (ECF No. 2);

(2) **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Duclos's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ***ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION***;

(3) **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Alison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or by forwarding an electronic version to trusthelpdesk@cdcr.ca.gov;

(4) **DIRECTS** the Clerk of the Court to issue a summons as to Duclos's Complaint (ECF No. 1) upon Defendants La, Garcia, Nhan, Williams, and Anelle, and to

forward the summons to Duclos along with blank U.S. Marshal Form 285s for these Defendants. In addition, the Clerk of the Court shall provide Duclos with a certified copy of his Complaint and the summons so that he may serve defendants La, Garcia, Nhan, Williams, and Anelle. Upon receipt of this "IFP Package," Duclos must complete the USM Form 285s as completely and accurately as possible; include addresses where defendants La, Garcia, Nhan, Williams, and Anelle may be found and/or subject to service pursuant to Civil Local Rule 4.1c.; and return the USM Form 285s to the U.S. Marshal according to the instructions the Clerk of the Court provides;

(5) **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants La, Garcia, Nhan, Williams, and Anelle as directed by Duclos on the USM Form 285s provided and to file executed waivers of personal service upon each of these Defendants with the Clerk of the Court as soon as possible after their return. Should any of these Defendants fail to return the U.S. Marshal's request for waiver of personal service within ninety (90) days, the U.S. Marshal shall instead file the completed Form USM 285 Process Receipt and Return with the Clerk of the Court; include the date the summons, Complaint, and request for waiver was mailed to that Defendant; and indicate why service upon that party remains unexecuted. All costs of U.S. Marshal service will be advanced by the United States; however, *if a Defendant located within the United States fails, without good cause, to sign and return the waiver requested by the Marshal on Duclos's behalf, the Court will impose upon that Defendant any expenses later incurred in making personal service.* See 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3), (d)(2);

(6) **ORDERS** Defendants La, Garcia, Nhan, Williams, and Anelle, once served, to reply to Duclos's Complaint, *and any subsequent pleading he may file in this matter in which they are named as parties*, within the time provided by the applicable provisions of Federal Rules of Civil Procedure 12(a) and 15(a)(3). See 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b) and thus made a preliminary determination based on the face of the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," Defendants are required to respond); and

(7) **ORDERS** Duclos, after service has been effected by the U.S. Marshal, to serve upon Defendants La, Garcia, Nhan, Williams, and Anelle—or, if appearance has been entered by counsel, upon Defendants' counsel—a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Federal Rule of Civil Procedure 5(b). Duclos must include with every original document he seeks to file with the Clerk of the Court a certificate stating the manner in which a true and correct copy of that document was served on Defendants or their counsel and the date of that service. *See* S.D. Cal.CivLR 5.2.

**IT IS SO ORDERED.**

Dated: July 28, 2022

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge